# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **SITE JAB** § | | |
| *Plaintiff,* § | | |
| § | | |
| **v.** § | | **C.A. NO. 4:23-CV-3853** |
| § | | |
| **HISCOX INSURANCE COMPANY INC.** § | | |
| *Defendant.* § | | |

## PLAINTIFF'S RESPONSE TO DEFENDANT HISCOX INSURANCE COMPANY INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff SITEJAB ("Plaintiff") files this Response to Defendant HISCOX INSURANCE COMPANY INC'S Motion for Summary Judgment and, in support thereof, would respectfully show the Court as follows:

### I.   SUMMARY OF RESPONSE

1.     This is not a wind/hail case.

2.     Plaintiff SiteJab, a website and marketing company located in Houston, Texas, has filed a lawsuit against Defendant HISCOX INSURANCE COMPANY INC. ("Defendant") related to a Businessowners Insurance Policy alleging breach of contract, violations of the Texas Insurance Code, violations of the DTPA, and Defendant's breach of its' duty of Good Faith and Fair Dealing. More specifically, this is a case involving multiple acts of employee dishonesty which are covered by the Policy and should have been appropriately paid out by Defendant but were not.  Accordingly, this lawsuit became necessary.

3.     Defendant has now filed this Motion for Summary Judgment in which it argues that Plaintiff is not entitled to coverage under the Policy. However, because Defendant already

rightfully opened Employee Dishonesty coverage under the Policy, and because Plaintiff can provide sufficient evidence of multiple occurrences of Employee Dishonesty that requires a larger payout than Defendant provided, Plaintiff can prove that there are genuine issues of material fact present, and thus, Defendant's Motion for Summary Judgment should be denied.

## II.  THE LAW AND THE EVIDENCE

### A.  Summary Judgment Standard

4.      Summary judgments are designed to dispose of claims or defenses only when those claims or defenses have absolutely no factual or legal support.[1] Summary judgment is not proper if the nonmovant shows that there are genuine issues of material fact and thus the movement is not entitled to a judgment as a matter of law.[2] In making the determination as to whether the movant has met its burden, the court must make all reasonable inferences of act in favor of the nonmovant.[3] The nonmovant has the burden of only showing a genuine dispute for trial,[4] not that it must prove it would win at trial.

### B.  Applying the Policy

5.      The parties agree that the Policy should be applied to this case. According to case law, an insured must provide evidence of damages that are covered by the appliable policy to recover from the insurer.[5] The policies are contracts between the parties. "Courts cannot make new contracts between the parties, but must enforce the contracts as written. Where the terms of an insurance policy are plain, definite and unambiguous, the courts cannot vary these terms."[6] when

---

[1] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[2] *Id.*
[3] *Scott v. Harris*, 550 U.S. 372, 378-80 (2007).
[4] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." (citing *Celotex*, 477 U.S. at 324)).
[5] *Royal Indemnity Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965); *see Bethea v. National Casualty Co.,* 307 S.W.2d 323, 324 (Tex.Civ.App.—Beaumont 1957, writ ref'd).
[6] *Id.*

a clause is subject to two or more reasonable interpretations, a court must adopt the construction urged by the insured as long as it's reasonable.[7]

### C. Evidence

Plaintiff submits the following summary judgment evidence in support of this Response:

**Exhibit A**:   Plaintiff's Business Records Affidavit

**Exhibit B**:   Defendant's Coverage Decision

**Exhibit C**:   Plaintiff's Demand Letter

**Exhibit D**:   Plaintiff's Original Petition

**Exhibit E**:   The Policy

### III.  UNDISPUTED FACTS

6. Plaintiff SiteJab purchased Businessowner's Insurance Policy No. P100.210.946A ("the Policy") effective February 5, 2022 to February 5, 2023 from Defendant, Hiscox Insurance Company Inc. Defendant accepted premiums from Plaintiff and provided Businessowner's Insurance Coverage – including coverage for employee dishonesty. The Employee Dishonesty coverage should result in a $5,000 payout per occurrence.

7. Plaintiff made claim #100.210.946 with Defendant reporting that a few of Site Jab's past and present employees colluded and conspired together to collect Plaintiff's confidential client information, sought out Plaintiff's clients, and then actively stole many of Plaintiff's clients which resulted in a substantial loss of revenue. During the policy period, Plaintiff told Defendant, via claims representative Barry Rix ("Rix") the following related to a separate lawsuit filed by Plaintiff against its' former employees:

> "We have filed a lawsuit against 6 former employees for conspiring to take down our business and even colluding with our clients. All of this is happening while they

---

[7] *Dragoo v. Allstate Vehicle and Property Insurance Company*, 2018 WL 1536639 (N.D. Texas 2018).

were employed by SiteJab. Because of their actions, we have lost nearly $1,000,000 in revenue in less than 3 months. This financial loss has been damaging to our overhead expenses. They also went into our servers and took down our clients' website and put it on their own servers and took down our clients website and put it on their servers, deleted our video footage and photos and removed files. All of that falls under intellectual theft of property. Based on our claims and with substantial evidence, the judge in Bexar County granted Temporary Restraining Orders to these former employees which prohibits engagement of any kind to our media partners, vendors and clients (past and present.)"[8]

8. Plaintiff went on to provide ample proof their claims and presented it to Defendant. Plaintiff provided Defendant with conclusive evidence that its' former employees had been dishonest and damaged Plaintiff, including invoices, evidence of former employees getting into Plaintiff's servers and removing website client website files, notes, timelines, lists, text screenshots, and emails.[9] Despite obtaining this evidence (which resulted in the Bexar County Court entering an agreed TRO), Defendant, via Rix, determined that without proof from Plaintiff's former clients stating exactly why they left, Defendant would be unable to include the loss in the payout.[10] *Plaintiff even went so far as to provide texts between current employees and a former employee regarding meeting with Plaintiff's clients and of an ex-employee going into servers and stealing website and social media posts.*[11] Even then, Rix decided he needed Plaintiff's clients to state on the record why they left Plaintiff to appropriately pay on the Policy.[12]

9. Defendant was aware of multiple dishonest acts committed by Plaintiff's employees that resulted in substantial loss to Plaintiff and, even then, Defendant has only paid

---

[8] *See* **Exhibit A**, at 001.
[9] *See* **Exhibit A.**
[10] *Id.,* at 069 and 073.
[11] *Id.,* at 023-67. For explanation, page 023 shows a screenshot that was taken of Window Source SA's login page. Both of SiteJab's users were not recognized upon attempting to login or through a password reset. However, former SJ employee's email, jay@redflamemedia.com was recognized. The second screenshot was taken from a hosting account, where the Window Source San Antonio website was hosted. There appears to be SFTP users, one of them including Jay, a former SJ employee, showing that he had access to the backend of the website. Page 024 shows Jay Moreno hacking into SiteJab servers through "back end access"(SFTP) and takes TheWindowSourceOfSA.com down and moves it to his server.
[12] *Id.,* at 068.

$5,000 total despite the Policy providing Employee Dishonesty Coverage at $5000 <u>per occurrence.</u>[13]

10.     Plaintiff sent Defendant a Demand on August 21, 2023 reciting the details of Plaintiff's claim.[14] Defendant still refused to appropriately pay Plaintiff for its' losses, and Plaintiff filed suit against Defendant on August 31, 2023 and further filed additional suit documents on October 11, 2023.[15]

### IV.  ARGUMENTS AGAINST SUMMARY JUDGMENT

11.     Plaintiff stated in its' petition, among other things, that its employees wrongfully accessed and took confidential information from Plaintiff's computer, colluded with other employees, and stole Plaintiff's clients. Overall, from Plaintiff's claims, it's clear that Plaintiff's employees' dishonest actions resulted in major losses of business income. In its' Petition, Plaintiff alleges that its' policy with Defendant covers the claims Plaintiff has made, and that Defendant still has refused to appropriately pay Plaintiff's claim. Plaintiff has sued Defendant for breach of contract, violations of the Texas Insurance Code, violations of the DTPA, and Defendant's breach of its' duty of Good Faith and Fair Dealing.

12.     Defendant now moves for summary judgment arguing Plaintiff is not entitled to coverage under the Policy. As will be shown below, Defendant has not proven as a matter of law that all of Plaintiff's causes of action should be dismissed.

**A.  <u>Defendant's Motion for Summary Judgment Should Fail Because the Policy Provides Coverage for the Acts Plaintiff's Employees Committed.</u>**

**i.  Employee Dishonesty**

---

[13] *See* **Exhibit A** and **Exhibit B.**
[14] *See* **Exhibit C.**
[15] *See* **Exhibit D.**

13. The Policy made basis of this lawsuit provides Employee Dishonesty Coverage. According to the Policy, Employee Dishonesty has a limit of Insurance at $5,000 each occurrence (shared).[16] Also according to the Policy:

> **Employee Dishonesty**
>
> I. The following is added to Section III. Coverage extensions:
>
> Employee dishonesty EM-A.
> direct physical damage to or loss of **covered property**, **money**, and/or **securities** resulting directly from **theft**, **forgery**, or other dishonest acts committed by any of **your employees**, whether identified or not, or in collusion with other persons or entities, with the manifest intent to:
>
> a. cause **you** to sustain damage or loss; and
> b. obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment) for any **employee** or any other person or entity.
> The coverage provided under this subsection EM-A will terminate as to any **employee**, once any of **your** partners, **members**, **managers**, officers, or directors not acting in collusion with the **employee** learns that the **employee** committed a **theft**, **forgery**, or other dishonest act before or after being hired by **you**.
>
> **We** will pay only for covered damage or loss sustained during the **policy period** and discovered no later than one year from the end of the **policy period**.[17]

The policy also discusses the following exclusions:

> II. Solely with respect to the coverage provided by this Endorsement, in Section VII. Exclusions – What is not covered, **B.**, the "Dishonesty" exclusion is deleted in its entirety and replaced with the following:
>
> Dishonesty 13.
> a. dishonest or criminal acts (including theft) by **you**, anyone else with an interest in the property, or any of **your** or their partners, **members**, officers, **managers**, employees (including temporary or leased employees), directors, trustees, or authorized representatives,

---

[16] *See* **Exhibit E,** at HISCOX 000032.
[17] *Id.,* HISCOX 000052.

whether acting alone or in collusion with each other or with any other party; or
b. theft by any person to whom **you** entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during **your** normal hours of operation, but does not apply to acts of destruction by **your** employees (including temporary or leased employees) or authorized representatives.

Solely with respect to coverage provided for **your accounts receivable** records and **valuable papers and records**, this exclusion does not apply to acts committed by carriers for hire.

However, this exclusion will not apply to the extent any damage or loss is covered under Coverage extension EM-A. Employee dishonesty.[18]

The following relevant definitions provided in the Policy that are applicable to this particular peril are as follows:

> IV. Solely for purposes of the coverage provided by this Endorsement, in Section VIII. Definitions, the definition of "**Money**" is deleted in its entirety and replaced with the following:
>
> **Money** means:
>
> 1. currency, coins, and bank notes in current use and having a face value;
> 2. traveler's checks, register checks, and money orders held for sale to the public; or
> 3. with respect to **employee theft loss** or **computer funds transfer loss**, deposits in **your** account at any **financial institution**.
>
> **Money** does not mean Bitcoin or any other digital currency, crypto currency, or electronic currency…
>
> **Discover**, **discovered**, or **discovery** means when **you** or any of **your** partners or **members** or **employees** first becomes aware of facts which would cause a reasonable person to believe a loss has been or will be sustained, regardless of whether the exact amount or details of the loss is known.

---

[18] *Id.*

> **Discover**, **discovered**, or **discovery** also means the first receipt by **you** or any of **your** partners or **members** or **employees** of notice of an actual or potential claim in which it is alleged that **you** are liable to a third party under circumstances which would constitute a loss under this Endorsement…
>
> **Theft** means the unlawful taking of property to its owner's deprivation.[19]

14. First, it should be noted that Defendant has already opened coverage for Employee Dishonesty in the amount of $5,000 due to some of the former employees' bad acts.[20] Defendant's coverage for Employee Dishonesty, though appropriately applied, was not sufficiently applied in that there were numerous occurrences of Employee Dishonesty which requires a much larger payout under the Policy. Here, a list of dishonest acts was committed by Plaintiff's employees: theft of confidential client information, theft of website files, conspiracy, collusion, theft of Plaintiff's clients, and violation of a non-compete.[21] This series of acts had to be repeated separately multiple times by Plaintiff's employees in order to steal each individual client that was taken from Plaintiff.

15. As stated in Plaintiff's Petition, from February through September 2022, Plaintiff's employees held multiple discussions concerning poaching clients, harming Plaintiff, leaving Plaintiff's company, and joining a different company.[22] Over time, these employees stole multiple clients from Plaintiff.[23] As evidenced by the separate emails from different clients regarding ceasing business with Plaintiff, each business had to be taken separately from Plaintiff.[24] This means that a separate series of acts of theft of confidential client information, theft of website files,

---

[19] *Id.,* at HISCOX 000053-54.
[20] *See* **Exhibit B.**
[21] *See* **Exhibit A.**
[22] *See* **Exhibit D**, at 4.
[23] *See* **Exhibit A** at 065-66 and **Exhibit D,** at 3.
[24] *See* **Exhibit A,** at 060-64.

conspiracy, collusion, and finally the theft of Plaintiff's client had to occur for each client acquisition. Because a separate series of acts had to occur for each client acquisition, Defendant, at the very least, owes Plaintiff more than the $5,000 that has already been paid.

16. Because Defendant already opened coverage for Employee Dishonesty, and because each client acquisition required a separate series of dishonest acts, Plaintiff can show that it is entitled to additional coverage under the Policy, and thus, has proven that summary judgment is inappropriate.

### B. Defendant Has Not Proven that Plaintiff's Bad Faith Claims (Common Law and Chapter 541) Fail as a Matter of Law.

17. Defendant next argues that the bad faith claims fail because Plaintiff's breach of contract claim fails as a matter of law, however, Defendant has not conclusively proven that Plaintiff's breach of contract cause of action fails as a matter of law. Accordingly, Plaintiff need not show an independent injury, and Defendant's argument that the bad faith claims should be dismissed because the breach of contract claim should be dismissed holds no water.[25]

### C. All of Plaintiff's Chapter 542 Claims Should Not be Dismissed as a Matter of Law.

18. Defendant's argument that all of the 542 claims should be dismissed because the breach of contract claim should be dismissed should be disregarded by the Court. As was shown above, Plaintiff's breach of contract claim should be allowed to go forward as there is evidence to support the claim and thus Defendant has not conclusively proven that it should be dismissed.

### D. Plaintiff's Claims for Violations of the Texas DTPA Should Not be Dismissed as a Matter of Law.

---

[25] *See Lyda Swinerton Builders, Inc. v. Oklahoma Surety Co.*, 903 F.3d 435, 454 (5th Cir. 2018); *see also USAA Tex. Lloyd's Co. v. Menchaca*, 545 S.W.3d 479, 494-95 (Tex. 2018) (pointing out that a Chapter 541 claim is available so long as the insured was entitled to additional policy benefits and the insurer's statutory violation caused him to lose them). In other words, as Plaintiff's breach of contract claim to recover policy benefits should go forward, Plaintiff may ultimately be able to recover under either its breach of contract or 541 causes of action.

19. Defendant's argument that Plaintiff's DTPA claims should be dismissed because the breach of contract claim should be dismissed should be disregarded by the Court because, as stated previously, Plaintiff's breach of contract claim should be allowed to go forward as there is evidence to support the claim and thus Defendant has not conclusively proven that it should be dismissed.

### E. In The Alternative, Plaintiff Requests Leave Of Court To Replead And File A Revied Complaint.

20. The trial of this matter is still months away.

21. In the event the Court determines Plaintiff needs to add additional specificity to its Petition and file a complaint in this Court for the first time, or it just wants Plaintiff to amend the Petition as Plaintiff offered to do above, pursuant to Federal Rule of Civil Procedure 15 Plaintiff respectfully asks the Court for leave to do so.[26]

### V. CONCLUSION

22. In Defendant's Motion for Summary Judgment, Defendant makes arguments that have no merit as proven by the evidence provided Plaintiff. Because Plaintiff has raised genuine issues of material facts and have presented more than a scintilla of evidence, Defendant is not entitled to summary judgment.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court deny Defendant's Motion in its entirety, or in the alternative grant Plaintiff leave to amend their lawsuit if necessary, and grant Plaintiff all other relief to which it is justly entitled in law or equity.

---

[26] Fed. R. Civ. P. 15 (which notes that leave should be "freely given" when justice so requires.)

Respectfully submitted,

**WHYTE PLLC**
2101 NW Military HWY
San Antonio, Texas 78213
Telephone: (210) 562-2888
Facsimile:(210)562-2873
Email: mwhyte@whytepllc.com

By: _____

Marc K. Whyte
State Bar No. 24056526
AND
Perry J. Dominguez II
perry@pdattorney.com
State Bar No. 24055414
AND
**Naomi Lara**
naomi@pdattorney.com
State Bar No. 24096944

**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon opposing counsel of record as shown below on the 1st day of November 2024:

***VIA: CM/ECF***
Candance A. Ourso
Kennedys CMK, LLP
Candace.ourso@kennedyslaw.com
848 Heights Boulevard
Houston, Texas 77007

ATTORNEY FOR DEFENDANT

 */s/ Naomi Lara*
NAOMI LARA